AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Alabama

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 2:17mj 238-TFM |
| Facebook User ID #100014553795095, that is stored at premises controlled by Facebook, Inc. | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Middle _____ District of _____ Alabama _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 751(a) | Escape of prisoner |
| 18 USC Section 752(a) | Instigating or assisting escape |

The application is based on these facts:

See Attached Affidavit.

☐ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John L. Garner, Deputy U.S. Marshal, USMS

*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 4, 2017 20945

*Judge's signature*

City and state: Montgomery, AL

Terry F. Moorer, U.S. Magistrate Judge

*Printed name and title*

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
FACEBOOK USER ID 100014553795095,
THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK INC.

Case No. 2:17mj238 TFM

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, John L. Garner, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user account/ID that is stored at a premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.       I am a Deputy United States Marshal, and have been since June 28, 2005. I am currently assigned to the Middle District of Alabama / Gulf Coast Regional Fugitive Task Force. As a part of my regular duties, I locate and arrest fugitives wanted for violating laws of the United States and the State of Alabama; I also investigate violations of 18 U.S.C. § 751(a) (Escape of a Prisoner), and related charges. On numerous occasions I have located and arrested fugitives based on information received from social media.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 751(a), Escape of a Prisoner, have been committed by Kenneth Lester Baxley and violations of 18 U.S.C. § 752(a), Instigating or Assisting Escape, by Tracy Blackmon Cox. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

### *The Escape*

5.      On March 26, 2004, Kenneth Lester Baxley was sentenced to 189 months of incarceration, to be followed by five years of supervised release, for being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g) and 924(e).  On May 17, 2017, Baxley was transferred from a United States Penitentiary (USP), to the Dismas Charities Halfway House, a Residential Re-entry Center, located at 125 E. Fleming Rd., Montgomery, AL 33521 (the RRC Montgomery).

6.      On or about September 12, 2017, Baxley submitted a leave form, titled Pass Request and Approval, to leave the RRC Montgomery campus with approval from September 16, 2017, starting at 8:00 a.m., to September 17, 2017, at 8:45 p.m.  The leave form listed Tracy Blackmon Cox as the approved pick-up person.  Cox was previously married to Baxley, and they

2

have at least one child in common. According to the leave form, Baxley referred to her as his fiancé.

7.      As planned, Baxley signed out of the RRC Montgomery at approximately 8:00 a.m. on September 16, 2017. However, according to RRC Montgomery Resident Monitor Patrick Higgins, Baxley failed to return by 8:45 p.m. on September 17, 2017.

8.      In response, the RRC Montgomery staff contacted local jails and hospitals, and the Prattville Police Department conducted a welfare check on the residential address listed on Baxley's leave form, 303 Poplar St., Prattville, AL. Within 24 hours of failing to return, Baxley was placed on escape status.

9.      On September 19, 2017, the Court issued an arrest warrant for Baxley based on probable cause that he escaped, in violation of 18 U.S.C. § 751(a). Middle District of Alabama Case No. 2:17-cj-214-WC.

10.     On September 22, 2017, Baxley was arrested for Escape in Valdosta, GA.

11.     Cox was present at the scene of the arrest, and was subsequently interviewed. Prior to the interview, Cox was read her Miranda Warning and waived her Miranda rights. Cox then stated that she knew Baxley did not finish his prison sentence and that he fled the State of Alabama. Cox also stated that she financed much of their trip while on the run.

12.     On September 26, 2017, the Grand Jury for the Middle District of Alabama found probable cause to indict Baxley for one count of Escape, in violation of 18 U.S.C. § 751(a). Middle District of Alabama Case No. 2:17-cr-00434.

*Facebook Connection*

13.     Law enforcement has determined that Baxley has a Facebook account under the name "Kenneth Baxley," with Facebook ID # 100017477986479. Law enforcement has also

3

determined that Cox has a Facebook account under the name "Tracey Blackmon," with Facebook ID # 100014553795095.

14.     As of October 2, 2017, Cox's Facebook profile picture includes a picture of her and Baxley together.

15.     Furthermore, one of Cox's family members informed Deputy U.S. Marshals that while Baxley was on the run, she used Facebook to communicate with Cox and Baxley.  Lisa Carter (Cox's sister) made a Facebook post where she tagged the Facebook identities of Baxley and Cox, as well as Morghan Baxley (the daughter of Cox and Baxley), Lauren McDonald (Cox's daughter from another relationship), Sandra Chipman (Cox's mother), Brandon McDonald (Cox's son from a previous relationship), and other individuals. As explained in more detail below, when names are tagged, a message is sent to that particular user to let them know that they were mentioned in another post.

   *Technical Background*

16.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

17.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state,

4

and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

18.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

19.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

20.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations

5

to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

21.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

22.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

23.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

6

24.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

25.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

26.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

27.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

28.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

29.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

30.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a

7

Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

31.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

32.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

33.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts

between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's

state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### *Conclusion*

36.     Based on the forgoing, the affiant submits that probable cause exists that Facebook ID 100014553795095 (Tracy Blackmon Cox's Facebook account), contains evidence of, and/or was used as a source of communication in furtherance of, a violation of 18 U.S.C. § 751(a), Escape of a Prisoner, and/or 18 U.S.C. 752(a), Instigating or Assisting Escape.

## **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

37.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

38.     Based on the forgoing, I request that the Court issue the proposed search warrant.

39.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

41.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

John L. Garner
Deputy U.S. Marshal
United States Marshals Service

Subscribed and sworn to before me on October 4, 2017 @ 0945

THE HONORABLE TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF ALABAMA

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID

100014553795095 (Tracy Blackmon Cox's Facebook account) that is stored at premises owned,

maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park,

California.

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, Facebook is required to disclose the following information to the government for the user ID listed in Attachment A, with the exception that Facebook is only required to disclose user-generated content that was created from on and after September 3, 2017 (two weeks prior to Baxley's escape):

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)      All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)   All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests, involving the accounts of Kenneth Baxley, Tracey Blackmon, Lisa Carter, Morghan Baxley, Lauren McDonald, Sandra Chipman, and Brandon McDonald.

(f)   All "check ins" and other location information, from Sept. 3, 2017 to present;

(g)   All IP logs, including all records of the IP addresses that logged into the account;

(h)   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)   All information about the Facebook pages that the account is or was a "fan" of;

(j)   All past and present lists of friends created by the account;

(k)   All records of Facebook searches performed by the account;

(l)   All information about the user's access and use of Facebook Marketplace;

(m)   The types of service utilized by the user;

(n)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account; and

2

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C § 751(a), Escape of a Prisoner, and 18 U.S.C. § 752(a), Instigating or Assisting Escape, involving the user ID identified in Attachment A, and the information pertaining to the following matters:

(a)    Evidence of communications in regards to planning or assisting in the escape of Kenneth Baxley, from September 3, 2017 to the present;

(b)    Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner, from September 3, 2017 to the present;

(c)    Evidence indicating the user's state of mind as it relates to the crime under investigation, from September 3, 2017 to the present;

(d)    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e)    The identity of the person(s) who communicated with the user ID about matters relating to 18 U.S.C. § 751(a), Escape of a Prisoner, and 18 U.S.C. § 752(a), Instigating or Assisting Escape, including records that help reveal their whereabouts.

3